IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                       CR No. 06-2253 JC

FRANCISCO GAMBINO-ZAVALA,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion to Suppress, filed December 20, 2006 (*Doc. 17*) ("Motion"). The primary question before the Court is whether the warrantless sweep of Defendant's dwelling, absent probable cause for arrest, was permissible pursuant to the exigent circumstances doctrine as it relates to victim safety. The Court, having considered the Motion, the parties' submissions, the relevant authority, and having held an evidentiary hearing on February 7, 2006, finds that the sweep of Defendant's apartment was lawful and the Motion is, therefore, denied.

**I.    Background**

On September 2, 2006 at approximately 4:45 a.m., Albuquerque Police Officers Soren Ericksen, Mike Avilla, and Don Piatt responded to a "shots fired" call in the area of Crest and Carlisle Boulevards in Southeast Albuquerque. Prior to their arrival, 911 dispatch had received at least five separate calls from identified individuals who each reported that numerous gunshots had been fired near, or from within, the Crestview Apartments ("Apartments"). Specifically, calls

came in from: (1) a man who lives nearby the Apartments; (2) a store manager from a nearby gas station and convenience store; (3) a Military Police Officer from Kirkland Air Force Base; (4) the mother of a woman who lives beneath Apartment J at the Apartments[1] and (5) an individual who heard shots fired as he drove by the Apartments.

     Upon arrival at the Apartments, the officers observed nothing notable, so Officer Ericksen requested over police radio that the dispatcher contact the female 911 caller who lived in the complex, to ask that she step out and give the officers further information.  A few moments later, Veronica Marez stepped out of her apartment and told the officers that the people who lived in the apartment directly above hers, Apartment J, had been repeatedly firing guns.  Mares appeared frantic and stated that the gunshots were so loud that she believed they might have been coming from inside the upstairs apartment.  Mares further stated that she had experienced problems with the people upstairs in the past and that they were known to carry guns. Mares pointed out two vehicles in the parking lot, oddly parked, that she identified as belonging to the residents to whom she referred.

     Based upon Mares' information and the information from the 911 dispatch, the officers went to the door of Apartment J and knocked several times without response.  As they began to leave, a light came on inside the apartment and, shortly thereafter, a young man now known as Defendant opened the door.  The officers requested that Defendant step outside, which he did. Defendant stayed outside the apartment door with Officer Ericksen while Officer Piatt entered Defendant's apartment to conduct a sweep to determine if there was anyone else inside the apartment who may have been shooting firearms or who may have been injured from the shooting.

---

[1]The Apartment resident herself was identified and contacted by emergency personnel.

Officer Piatt found no other person inside the apartment, though in plain view he saw a shotgun with a sawed off barrel and a pistol grip along with a large amount of ammunition in various calibers. Officer Piatt then exited the apartment and informed Officer Sorensen that the apartment was clear. The officers had experienced some difficulty communicating with Defendant, so a Spanish-speaking officer, Officer Ladio Canales, was called to the scene. Defendant admitted that he was a citizen of the Republic of Mexico and was in the United States illegally. A criminal history check was run and it was determined that Defendant had outstanding misdemeanor warrants. The United States adopted the case for prosecution and on October 25, 2006 Defendant was indicted on the charge of possession of a firearm in violation of 18 U.S.C. § 922(g)(5). Defendant presently seeks exclusion of the weapon as remedy for what he perceives to be a violation of his Fourth Amendment protections.

## II.  Legal Standard

The Fourth Amendment to the United States Constitution protects the right of citizens to be free from "unreasonable searches and seizures." U.S. CONST., amend. IV. The Fourth Amendment prohibits police from effectuating any warrantless and non-consensual entry of a home absent compelling, exigent circumstances. *Payton v. New York*, 445 U.S. 573, 583-90 (1980). In fact, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id* at 585. Accordingly, searches and seizures inside a home without [consent or] a warrant are presumptively unreasonable under the Fourth Amendment. *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). The exclusionary rule is a remedy created by the courts to deter unlawful police conduct. *United States v. Leon*, 468 U.S. 897, 906 (1984).

The government bears the burden of establishing that a warrantless search of an

individual's home is justified by a lawful exception to the warrant requirement.  *See id*.  In fact, in the Tenth Circuit, it is generally true that the government must demonstrate both probable cause and exigent circumstances to support such a search.  *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998).  Exigent circumstances exist when there is probable cause for a search or seizure and the evidence of a crime is likely to be imminently destroyed, or the safety of law enforcement officers or the public is threatened.  *See Warden v. Hayden*, 387 U.S. 294, 298-99 (1967).  The existence of exigent circumstances is a mixed question of law and fact."  *United States v. Anderson*, 981 F.2d 1569, 1567 (10th Cir. 1992).

### III.   Discussion

The operative facts here present an interesting question of what a police officer may or must do in this Circuit when faced with a decision between potentially violating one citizen's constitutional protections or, on the other hand, leaving themselves unprotected or shirking their duty to render aid to possible gunshot victims.  Recently, the Tenth Circuit touched upon this issue, though resolution thereof is still pending.  *See United States v. Walker*, 2007 WL 259661 (10th Cir. Jan. 31, 2007) (reversed and remanded for "consideration of whether exigent circumstances may have justified a search of [defendant's] home as a sweep for potential victims.")  Lacking the benefit of guidance from the Tenth Circuit's final determination in *Walker*, this Court attempts to navigate this somewhat murky area of the law.

The Tenth Circuit has for some time recognized that the police may conduct a "protective sweep" for officer safety inside a home, but only if the sweep is incident to a lawful arrest.  *United States v. Davis*, 290 F.3d 1239, 1242 n.4 (10th Cir. 2002)(citing *Maryland v. Buie*, 494 U.S. 325 (1990)).  Here, it is undisputed that Defendant was not under arrest, nor were there sufficient

grounds for arrest until after the sweep turned up the weapon.  Hence, as the Tenth Circuit found of the sweep in *Walker*, this "protective sweep" cannot be justified by *Buie*.  This apparently is so notwithstanding *United States v. Najar*, 451 F.3d 710, 717 (10th Cir. 2006)(articulating a modified two-part test to determine whether the risk of personal danger created exigent circumstances as being "(1) whether the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable.").

In *United States v. Davis*, the Tenth Circuit declined to grant "unfettered permission to officers to enter homes, based only upon a general assumption domestic calls are *always* dangerous" and held, instead, that "an officer's warrantless entry of a residence during a domestic call is not exempt from the requirement of demonstrating exigent circumstances." *United States v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002) (emphasis in original).  Accordingly, *Davis* is instructive insofar as it establishes that domestic violence calls do not categorically create exigency.   Assuming, *arguendo*, that 911 calls reporting repeated gunfire coming from an apartment complex also do not create exigency in every circumstance, the government must also rely, as it does, on the additional information the officers received from the Apartment resident below Apartment J to support the reasonableness of their decision to conduct the sweep.  Mares stated that the shots were so loud that she believed they may have come from inside Apartment J and that the residents of Apartment J were known to be armed, dangerous, and often drunk.  Accordingly, the Court finds that the officers' fear not only for their own safety, but for that of any other person who may have been injured by bullets, created emergency aid exigency.

The officers could apparently never be justified, under *Torres-Castro* and its predecessors,

5

in conducting a sweep to protect *themselves* from potential dangers lurking inside the apartment on these facts, for lack of the "incident to arrest" requirement (no matter how broadly that term is read). *See United States v. Torres-Castro*, 470 F.3d 992, 996-97 (10th Cir. 2006). Nonetheless, it is only reasonable that the officers be permitted to discharge their community caretaker duty to render aid to anyone else who might be inside and wounded. This exception to the warrant requirement is best described as application of the exigent-circumstances doctrine as it relates to victim safety. *See United States v. Najar*, 451 F.3d 710. As the Court reads the relevant case law, this emergency aid exigency does not carry with it an "incident to arrest" requirement. Moreover, it is important to note that permitting the warrantless sweep of Defendant's apartment on the facts of this case serves the compelling law enforcement goal of community caretaking as consistent with *Mincey v. Arizona*, 437 U.S. 385, 394 (1978) ("the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid").

### III.    Conclusion

In summary, the Court determines that, on the particular facts of this case, the police officers acted reasonably and lawfully in conducting a sweep of Defendant's apartment in order to satisfy their duty to determine whether any person inside the apartment was injured by the gunfire and, if so, to render aid. Further, the unrefuted testimony at the hearing established that the subject weapon and ammunition were in plain view. Accordingly, Defendant's Motion to Suppress is denied.

WHEREFORE,

**IT IS ORDERED** that Defendant's Motion to Suppress, filed December 20, 2006 (*Doc. 17*) , is DENIED.

Dated March 1, 2007.

                                                s/John Edwards Conway

                                       _____
                                       SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

    Reeve L. Swainston, AUSA
    Albuquerque, New Mexico

Counsel for Defendant:

    Brian Pori, Esq.
    Inocente, P.C.
    Albuquerque, New Mexico